**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEPHEN D. H., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANDREW M. SAUL, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 18-CV-598-CVE-JFJ |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Stephen D. H. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.     General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 40-year-old male, applied for Title II disability insurance benefits and Title XVI social security income benefits on December 30, 2015, alleging a disability onset date of July 17, 2015. R. 26, 37. Plaintiff claimed that he was unable to work due to conditions including chronic obstructive pulmonary disease ("COPD"), dyspnea, respiratory failure, and hypertension. R. 228. Plaintiff's claims for benefits were denied initially on February 26, 2016, and on reconsideration on May 26, 2016. R. 63-118. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on November 7, 2017. R. 45-62. The ALJ issued a decision on February 1, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other work that exists in significant numbers in the national economy. R. 26-39. The Appeals Council denied review, and Plaintiff appealed. R.1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2017, and that he had not engaged in substantial gainful activity since his alleged onset date of July 17, 2015. R. 28-29. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; COPD/shortness of breath; major depressive disorder; and generalized anxiety disorder. R. 29. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 29-31.

After evaluating the medical and opinion evidence, Plaintiff's statements, and Plaintiff's third-party statements, the ALJ concluded that Plaintiff has the RFC to perform a range of sedentary work as follows:

3

> The claimant is able to lift and/or carry, and push and/or pull, ten pounds occasionally and less than ten pounds frequently. The claimant is able to stand and/or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday, with normal breaks. The claimant is unable to climb ladders, ropes or scaffolds. The claimant is able to occasionally climb ladders, balance, bend, stoop, kneel, crouch and crawl. The claimant should avoid fumes, odors, dusts, toxins, gases and poor ventilation. The claimant is able to perform simple and detailed tasks, but not complex tasks.

R. 31. At step four, the ALJ found that Plaintiff was unable to return to past relevant work. R. 37. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary exertion work, such as document preparer, assembler, and stuffer. R. 37-38. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 38. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Although Plaintiff does not clearly set forth his specific points of error in challenging the denial of benefits, the undersigned reads his brief to raise four points of error, all pertaining to his physical RFC determination: (1) the ALJ failed to properly evaluate Plaintiff's obesity; (2) the ALJ did not properly discuss Plaintiff's severe COPD; (3) the ALJ failed to analyze Plaintiff's "venous stasis dermatitis"; and (4) the ALJ did not properly evaluate Plaintiff's heart problems. ECF No. 13.[1]

---

[1] Although Plaintiff appears to frame these errors in relation to the ALJ's consistency analysis (*see* ECF No. 13 at 5-7), the substance of his arguments pertain to the alleged omission of certain evidence in reaching the physical RFC determination and not to the consistency of Plaintiff's subjective complaints with the evidence of record. Accordingly, the undersigned considers any consistency arguments to be waived. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.") (quotations and brackets omitted)).

4

### IV.     Analysis

#### A.     The ALJ Reasonably Considered and Evaluated Plaintiff's Obesity

Plaintiff argues the ALJ committed reversible error by failing to properly assess obesity when determining Plaintiff's RFC. In particular, Plaintiff argues the ALJ erred by not expressly calculating and noting Plaintiff's body-mass index ("BMI") as part of the decision.

Plaintiff's arguments are unavailing. An ALJ must consider the effects of obesity when determining a claimant's RFC. *See* Social Security Ruling ("SSR") 02-01p, 2000 WL 628049. Obesity can affect "exertional, postural, and social functions," and "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Accordingly, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.* The obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. Oct. 21, 2016).

Here, the ALJ found that obesity was a severe impairment at step two. R. 29. At step three, he stated he considered the obesity criteria set out in SSR 02-01p and concluded, "[t]he totality of evidence does not show that the functional effects of obesity combined with the claimant's other impairments either meets or equals a listing." *Id.* In the RFC discussion, the ALJ noted Plaintiff's height and weight as observed at various medical visits. R. 34-36. *See, e.g.*, R. 488 (height of 69 inches and weight of 350 pounds in February 2016), R. 513 (height of 69 inches and weight of 408 pounds in May 2017). The ALJ also noted Plaintiff's diagnosis of "hypercapnic acute respiratory failure" caused in part by his "morbid obesity" in July 2015, and the assessment of "morbid obesity" at his physical consultative exam in February 2016. R. 397, 489. Plaintiff

does not cite to medical evidence addressing the impact of his obesity on other functional areas. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004).  By contrast, the February 2016 physical consultative exam, which noted Plaintiff's morbid obesity, was essentially normal and consistent with the ALJ's RFC determination.  *See* R. 488-494.  The undersigned finds the ALJ's discussion of obesity was reasonable and sufficient.

Plaintiff contends it was necessary for the ALJ to consider Plaintiff's BMI as part of the obesity analysis.  SSR 02-01p recognizes three levels of obesity, with Level III, a BMI greater than or equal to 40, being termed "extreme" obesity and "representing the greatest risk for developing obesity-related impairments." *Id.* at *2.  Plaintiff states that his BMI ranged from 57-60, far into the category of Level III obesity.  ECF No. 13 at 7-8.

In support of his argument that the ALJ was required to discuss BMI, Plaintiff cites to several unpublished Tenth Circuit decisions: *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003); *Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008); and *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010).  However, none of these cases specifically addressed the claimant's BMI.  These cases are also factually distinguishable.  In *Baker* and *Hamby*, the ALJ apparently failed to discuss the claimant's obesity beyond step two of the analysis, which the Tenth Circuit found to be reversible error.  *See Baker*, 84 F. App'x at 14; *Hamby*, 260 F. App'x at 111-12.  In *DeWitt*, the ALJ found obesity to be a severe impairment and gave substantial weight to a physician's testimony that the claimant could perform a range of sedentary work, but the ALJ mistakenly believed the physician had identified obesity as one of the claimant's medical conditions.  381 F. App'x at 785.  The Tenth Circuit found that, given the ALJ's reliance on and incorrect characterization of the physician's testimony, the ALJ had not satisfied his duty to consider the effects of the claimant's obesity on her other severe impairments.  *Id.*

6

Here, in contrast to *Baker* and *Hamby*, the ALJ clearly acknowledged and addressed Plaintiff's obesity at steps two and three, and in discussing the RFC determination, but nonetheless found Plaintiff could perform a reduced range of sedentary work. Unlike *DeWitt*, Plaintiff points to no conflict or lack of development in the record regarding obesity. Plaintiff has not pointed to any medical evidence indicating his obesity resulted in functional limitations greater than those stated in the RFC. *See Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where ALJ found obesity severe and included specific postural limitations consistent with record but did not specifically mention obesity in RFC determination). Plaintiff cites no authority in support of his claim that the ALJ was required to calculate and discuss Plaintiff's BMI, and SSR 02-01p does not require such a discussion. The diagnosis of obesity, even extreme obesity, does not necessarily translate into functional limitations. The undersigned identifies no error in the ALJ's consideration of Plaintiff's obesity.

### B.     The ALJ Reasonably Considered Plaintiff's COPD

Plaintiff argues the ALJ did not properly analyze or discuss his COPD. In particular, Plaintiff contends the ALJ failed to mention either a spirometry report dated August 21, 2015, which showed results of "severe obstruction," or a March 2016 opinion from Plaintiff's physician, Bryan Lewis, D.O., that Plaintiff's COPD was "severe – 59% of predicted vital capacity for his age." R. 498-501.

Plaintiff's argument is not persuasive. It is well established that, while an ALJ must discuss evidence that is inconsistent with the RFC, he is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects") (citation omitted). Here, Plaintiff fails to show how either the spirometry report or Dr.

7

Lewis' notation demonstrates any further functional limitations than those identified in the RFC. At step two, the ALJ found Plaintiff's COPD/shortness of breath to be a severe impairment, and he limited Plaintiff to sedentary work with, among other limitations, avoidance of fumes, odors, dusts, toxins, gases, and poor ventilation. R. 29, 31. The ALJ documented Plaintiff's history of COPD in the decision, including his July 2015 hospitalization and intubation for respiratory failure. R. 33-34. Given the substantial evidence supporting the RFC and the ALJ's conclusion, the ALJ's failure to expressly mention the single spirometry result, taken less than one month after his release from the hospital, does not amount to reversible error. *See Howard*, 379 F.3d at 947 ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").[2]

Regarding Dr. Lewis' notation, the ALJ did expressly consider Dr. Lewis' opinions. R. 36-37. However, he gave them little weight, because Dr. Lewis had seen Plaintiff only twice, and had performed only one physical exam. R. 36-37. The ALJ further found Dr. Lewis' opinions were not supported by his examination findings either before or after the completion of the opinion, or by other medical evidence of record. *Id.* Plaintiff does not challenge the ALJ's analysis or assignment of little weight to Dr. Lewis' opinions. Moreover, Plaintiff fails to show how discussion of the COPD notation would change the RFC assessment. Accordingly, the undersigned identifies no error in the ALJ's failure to recite Dr. Lewis' note regarding the severity of Plaintiff's COPD.

---

[2] In the reply brief, Plaintiff argues for the first time that the ALJ should have ordered a spirometry test. ECF No. 16 at 2. The undersigned declines to address issues raised for the first time in a reply brief. *See Martin K. Eby Const. Co., Inc. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) ("'[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.'") (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009).

      **C.    The ALJ Reasonably Considered Plaintiff's Undiagnosed Venous Stasis Dermatitis**

Plaintiff contends the ALJ committed reversible error by failing to link Plaintiff's testimony that he needs to elevate his legs with examination findings "[consistent with] venous stasis dermatitis" on Plaintiff's legs. See R. 56, 519. Plaintiff's argument is not persuasive. At the May 2017 examination Plaintiff cites, the examining physician did not diagnose Plaintiff with venous stasis dermatitis, but rather observed findings *consistent with* the condition. R. 519. Apart from this one observation, Plaintiff points to no part of the record to support such a diagnosis. By contrast, examinations repeatedly showed normal examination findings regarding Plaintiff's skin. R. 489, 503, 514, 535, 542, 548. *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations).

In addition, the ALJ noted the findings from the May 9, 2017, examination, including the venous stasis dermatitis findings. R. 35. He further found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record. R. 33. The undersigned identifies no error.

      **D.    The ALJ Reasonably Considered Plaintiff's Cardiac Problems**

Finally, Plaintiff argues the ALJ failed to properly consider Plaintiff's heart problems, including congestive heart failure. Plaintiff cites an x-ray taken during his hospitalization in July 2015, which included an impression of "[w]orsening [congestive heart failure]." R. 348. Plaintiff's argument is unavailing. The ALJ thoroughly discussed Plaintiff's hospitalization in July 2015, including Plaintiff's admission, intubation, transfer to intensive care, the results of a chest x-ray (pulmonary vascular and intersitial congestion), the results of an echocardiogram (moderate left ventricular hypertrophy), and his diagnoses upon discharge (hypercapnic acute respiratory failure caused by a combination of COPD, morbid obesity, obstructive sleep apnea,

and likely community-acquired pneumonia; COPD; umbilical hernia; hypertension; and obstructive sleep apnea). R. 33-34. *See* R. 330-365, 385-478. Plaintiff was not diagnosed with congestive heart failure or left ventricular hypertrophy upon discharge, and Plaintiff never sought care for these conditions after his hospitalization. *See* R. 330-367, 502-505, 511-550.[3] Although Plaintiff testified that he was told to keep his legs elevated due to swelling from his congestive heart failure (R. 56), this recommendation is not otherwise part of the medical record. R. 326-550. Moreover, Plaintiff does not cite to any part of the record in support of additional functional limitations regarding his cardiac condition, and he does not contend that additional functional limitations beyond those contained in the RFC would be required to accommodate his conditions. The undersigned identifies no error.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 27, 2020.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

---

[3] Plaintiff did have an echocardiogram in May 2017 after his physician observed lower extremity edema (R. 519-520, 522-525), but the results are illegible in the record, and Plaintiff does not mention the study in his briefing.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

    **SUBMITTED** this 13th day of January, 2020.

                                                   **JODI F. JAYNE, MAGISTRATE JUDGE**
                                                 **UNITED STATES DISTRICT COURT**