UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

STEPHEN D.H., )
 )
        **Plaintiff,** )
 )
v. ) Case No. 18-CV-0598-CVE-JFJ
 )
ANDREW M. SAUL, )
Commissioner, Social Security )
Administration, )
 )
        **Defendant.** )

**OPINION AND ORDER**

Before the Court is the report and recommendation (Dkt. # 17) of Magistrate Judge Jodi F. Jayne recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability benefits. Plaintiff timely filed an objection (Dkt. # 18) to the report and recommendation, and he seeks remand for further review. Defendant has filed a response to plaintiff's objection (Dkt. # 19) and plaintiff filed a reply (Dkt. # 20). The Court has reviewed the record and has conducted a de novo review of those portions of the findings or recommendations to which objection was made.

**I.**

**Background**

On December 30, 2015, plaintiff applied for benefits, alleging a disability onset date of July 17, 2015, due to chronic obstructive pulmonary disease (COPD), dyspnea, respiratory failure, and hypertension. Dkt. # 11, at 30, 232. Plaintiff requested a hearing before an administrative law judge (ALJ), and that hearing was held on November 7, 2017, in Tulsa, Oklahoma. Id. at 30. Plaintiff appeared at the hearing and was represented by an attorney. Id.

*1. Plaintiff's General Characteristics*

Plaintiff, a then-current smoker, was forty years old when he claimed disability. Id. at 41. He has at least a high school education and is able to communicate in English. Id. Plaintiff last worked as a gas station and convenience store clerk, until he was let go due to his inability to work with others, although he testified that he stopped due to stomach pains. Id. at 35-36, 54. At the time of his hearing, plaintiff weighed between 390 and 410 pounds. Id. at 36. Plaintiff claimed at the hearing that he sits on a recliner during the day with a CPAP (breathing aid for sleep apnea) at least five times per month, and every night. Id. Plaintiff spends his days in his garage in front of a computer, with his legs elevated to alleviate swelling. Id. The swelling is due to edema from congestive heart failure. Id. Plaintiff exercises until he experiences shortness of breath, and has begun to manage his food and calorie intake. Id.

Plaintiff's sister provided a report showing that plaintiff provides care for his daughter, helping her with homework and errands, and he provides care for pets. Id. The report also shows that plaintiff prepares meals daily, cleans and does his laundry with reminders, and goes outside daily. Id. Other than putting on his shoes and bathing, plaintiff has no problems with performance of personal care tasks. Id. Plaintiff travels by driving a car, and is able to go out alone. Id. He spends his time watching television, playing video games, and working with cars. Id. He also spends time with others, either by playing video games, or otherwise. Id. Plaintiff regularly goes to the grocery store and picks up his children from school. Id.

*2. Plaintiff's Medical History*

Between July 19 and July 28, 2015, plaintiff received inpatient treatment at St. John Medical Center. Id. at 37. Plaintiff had originally gone to the emergency room for abdominal pain that

2

decompensated into respiratory failure. Id. Plaintiff was admitted to, and stabilized in, the intensive care unit. Id. Plaintiff appears to have developed pneumonia while at the hospital. Id. Upon discharge, plaintiff was assessed with "hypercapnic acute respiratory failure caused by a combination of [COPD], morbid obesity, obstructive sleep apnea, and likely community-acquired pneumonia. [He] was also assessed with [COPD], umbilical hernia, hypertension[,] and obstructive sleep apnea." Id. at 37-38.

Plaintiff was evaluated in an annual examination at Jenks Family Physicians on August 13, 2015, with complaints of COPD, hypertension, sleep apnea, mixed hyperlipidemia [abnormally high concentration of fats or lipids in the blood], arthritis, and chronic back pain. Id. at 38. Plaintiff was measured at sixty-nine inches tall, weighing 356 pounds. Id.

On February 8, 2016, plaintiff was evaluated by Heather Ranger, Ph. D., for a psychological consultative examination. Id. He reported depression since childhood, anxiety since early adulthood, anger, and past suicidal thoughts. Id. He had been prescribed an antidepressant. Id. He was diagnosed with major depressive disorder. Id.

On February 10, 2016, plaintiff was evaluated by Tommie Simon, M.D., internal medicine specialist. Id. Plaintiff complained of breathing problems and chronic pain. Id. He "was in no acute distress." Id. His examinations were "negative for wheez[ing]." Id. at 39. His breathing was unlabored. Id. Plaintiff was diagnosed with COPD, sleep apnea, morbid obesity, chronic pain, depression, anxiety, and hypertension. Id.

Plaintiff was again evaluated at Jenks Family Physicians on May 4, 2016, with complaints of joint pain, sleep apnea, and COPD. Id. Plaintiff requested medication to help him lose weight.

Id. He stated that he was unable to monitor his blood pressure or weight at home due to obesity. Id. The clinic was unable to measure plaintiff's weight or blood pressure due to his physical size. Id.

Plaintiff was evaluated at Oklahoma State University Center for Health Sciences on May 9, 2017, with a reported history of COPD, hypertension, obstructive sleep apnea, morbid obesity, a smoking history, and bone spurs. Id. Plaintiff weighed 406 pounds. Id. Plaintiff exhibited a depressed mood. Id. He returned for an evaluation on May 23, 2017. Id. His depression had improved and he experienced no medication side effects. Id. He weighed 407 pounds. Id. at 40. Plaintiff returned on June 15, 2017, for further follow up. Id. Plaintiff reported that his shortness of breath and mood had improved. Id. He weighed 399 pounds. Id. He returned again on September 18, 2017, and weighed 392 pounds. Id.

On October 30, 2017, plaintiff underwent a series of X-rays for joint pain. Id. The X-rays showed no abnormality. Id. The ALJ found that the objective findings do not support any functional limitations. Id.

The ALJ also considered an opinion from Brian Lewis, D.O., of Jenks Family Physicians. Id. The opinion did not show any physical examination but, rather, a record of vital signs and diagnoses. Id. The opinion included a spirometry report. Id. at 504-05. However, the ALJ gave little weight to the report because of inconsistencies in it. Id. at 40-41.

*3. The Vocational Expert's Testimony*

At the disability hearing, the ALJ called vocational expert (VE) Angharad Young, L.P.C., a licensed professional counselor, to testify about plaintiff's previous work history and his ability to work. Id. at 62, 323. The VE testified that plaintiff has been a cashier clerk, which the VE described as a semi-skilled job with light exertion; an auto parts clerk, which the VE described as

4

a skilled job requiring light exertion; a pizza delivery driver, which the VE described as an unskilled job with medium exertion; and a bouncer, which the VE described as a semi-skilled job with light exertion according to the Dictionary of Occupational Titles (4th ed. Rev. 1991) [DOT]. Id. at 62-63.

The ALJ asked the VE a series of hypothetical questions. Id. at 63. The ALJ first asked whether a hypothetical individual of the plaintiff's age, education, and past work, who could lift no more than ten pounds occasionally and less than ten pounds frequently, could sit six hours in an eight hour day, stand or walk two hours in an eight hour day, could not climb ladders, ropes, or scaffolding, could occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, could perform simple and detailed tasks but not complex tasks, and would be limited to no more than a normal level of exposure to gases, fumes, dust, odor, or poor ventilation could perform plaintiff's past work. Id. The VE responded that the hypothetical would not allow for plaintiff's past work. Id.

The VE was next asked whether this hypothetical individual could perform any other jobs. Id. The VE answered that the individual could be a document preparer (DOT § 249.587-018; 88,000 positions available), an assembler (DOT § 726.684-110; 98,000 positions available), or a stuffer (DOT § 731.685-014; 89,000 positions available), which are all unskilled positions with sedentary exertion according to DOT. Id. at 63-64.

The ALJ next changed the hypothetical to include an individual who would need to elevate his legs to waist level or higher at least one to two hours a day. Id. at 64. The VE responded that the jobs described would not be available according to her information in the DOT, because the question is outside the scope of the DOT. Id. Plaintiff's attorney then asked if the VE's answer would change if the individual could sit for only forty-five minutes to an hour at a time and had to

5

walk around five to ten minutes before he could sit again. Id. The VE responded that her answer would not change, that the individual would not be able to perform the jobs previously stated according to the DOT. Id. Plaintiff's attorney then asked if the individual had to miss up to five days per month whether her answer would change. Id. The VE responded that it would not, because the individual could miss only one day per month with these jobs. Id. at 65.

   *4. The ALJ's Decision*

On February 1, 2018, the ALJ issued a written decision finding plaintiff not disabled. Id. at 27. The ALJ found that plaintiff had not engaged in substantial gainful activity since July 17, 2015, that he had severe impairments affecting his ability to work, and that his impairments were not equivalent to the ones listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 33. The ALJ next formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony. Id. at 35. The ALJ found that plaintiff could perform "sedentary work," as defined by 20 C.F.R. 404.1567(a) and 416.967(a), with additional limitations. Id. Among the limitations in plaintiff's RFC was the determination that plaintiff

> is able to lift and/or carry, and push and/or pull ten pounds occasionally and less than ten pounds frequently. [He] is able to stand and/or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday, with normal breaks. [He] is unable to climb ladders, ropes[,] or scaffolds. [He] is able to occasionally climb ladders, balance, bend, stoop, kneel, crouch[,] and crawl. [He] should avoid fumes, odors, dusts, toxins, gases[,] and poor ventilation. [He] is able to perform simple and detailed tasks, but not complex tasks.

Id. Based on the RFC and the record, the ALJ found that plaintiff is unable to perform any past relevant work. Id. at 41. However, the ALJ determined that, "[c]onsidering [plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." Id. The ALJ determined, based on the VE's

6

testimony, that plaintiff can perform the jobs of document preparer, assembler, and stuffer. Id. at 42.

On November 8, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Id. at 5. Plaintiff thereafter sought judicial review. The Court referred the case to the magistrate judge, who entered a report and recommendation that the Court affirm the Commissioner's decision. Dkt. # 17, at 10.

## II.

### Standard of Review

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[1]  28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir.

---

[1]  Plaintiff attempts to "incorporate[] by reference" the arguments raised in his opening brief. Dkt. # 18, at 5. However, the Court does not consider arguments made in the opening brief; it considers only those arguments raised in objection to the report and recommendation. 28 U.S.C. § 636(b)(1).

7

2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id*. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

## IV.

### Analysis

Plaintiff raises three objections. Plaintiff's first objection seems to be that the ALJ improperly discounted plaintiff's testimony as inconsistent or not credible. Dkt. # 18, at 7. The second objection is that the ALJ did not factor in plaintiff's BMI in the obesity determination, and

8

that he failed to account for plaintiff's obesity. Id. at 10. Plaintiff's third objection is that the ALJ erred in the COPD determination, and that he should have considered spirometry reports. Id. at 18.

*1. Plaintiff's "Consistency" or "Credibility" Argument*

Plaintiff argues that the ALJ did not consider his testimony regarding his subjective complaints. Id. at 7. Specifically, plaintiff argues that "[t]he 'consistency' / 'credibility' analysis of a plaintiff's subjective complaints and testimony under SSR 16-p applies to both medical evidence that an ALJ lists in the decision as well as that which the ALJ omits." Id.

Social Security Ruling 16-3P states: "We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3P, 2017 WL 5180304, at *6. The ALJ did consider plaintiff's testimony concerning his subjective limitations, and he explained why he did not give them great weight: they conflicted with the medical evidence. See Dkt. # 11, at 37. For example, plaintiff stated in his testimony that he elevates his legs during the day to alleviate swelling due to edema caused by congestive heart failure. Dkt. # 11, at 36. However, plaintiff does not identify any medical reports establishing treatment of elevating his legs due to congestive heart failure; he simply states that the ALJ did not consider his congestive heart failure. Concerning plaintiff's congestive heart failure, the ALJ considered plaintiff's May 4, 2016, visit to Jenks Family Physicians in which his cardiovascular examination was normal. Id. at 39. This conflicts with plaintiff's testimony that his congestive heart failure requires that he elevate his legs. Thus, the ALJ acted within his discretion in discounting plaintiff's testimony because it conflicted with the medical evidence. That one examination showed "worsening [congestive heart failure]" is insignificant, because the ALJ is not required to discuss all of the medical evidence. See

9

Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Further, when questioning the VE, the ALJ asked whether the hypothetical individual could perform the jobs stated if he had to elevate his legs to waist level or higher at least one to two hours a day. Id. at 64. The VE responded that this question was outside the scope of the DOT. Id. Therefore, it is clear that the ALJ considered plaintiff's testimony regarding his subjective complaints. The Court finds that plaintiff's first objection should be denied.

*2. Plaintiff's Obesity and Body Mass Index (BMI) Argument*

Plaintiff next argues that the ALJ did not consider plaintiff's obesity. Dkt. # 18, at 10. Specifically, plaintiff argues that "[t]he [ALJ] did not properly address the 60 BMI . . . obesity issue and . . . the ALJ's discussion of obesity w[as] cursory and basically boilerplate." Id.

"Social Security Ruling 02-1p requires a claimant's obesity to be factored into the RFC." Razo v. Colvin, 663 F. App'x 710, 716 (10th Cir. 2016) (unpublished) (citing SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002)). The ALJ found at step two that plaintiff's obesity is severe. Dkt. # 11, at 33. Therefore, he was required to discuss "any functional limitations resulting from the obesity" in formulating the RFC assessment. SSR 02-1p, 2002 WL 34686281, at *17. However, obesity considerations may be "subsumed within the discussion of [a claimant's] other medical conditions." Razo, 663 F. App'x at 716.

The ALJ thoroughly considered plaintiff's medical conditions and his obesity. The ALJ considered plaintiff's testimony that he weighed between 390 and 410 pounds. See Dkt. # 11, at 36, 53. He also noted plaintiff's sister's report that plaintiff has issues putting on shoes and has lost his breath while bathing. Id. at 36. He referenced nine medical visits plus one X-ray for joint pain. Id.

10

at 37-41. In the RFC, the ALJ determined that plaintiff could perform only "sedentary work," presumably due to his obesity. See id. at 35. The ALJ's findings are consistent with Tenth Circuit precedent. See Rose v. Colvin, 634 F. App'x 632, 637 (10th Cir. 2015) (finding no error in obesity evaluation where the ALJ found obesity severe and included specific postural limitations consistent with the record, but did not specifically mention obesity in the RFC determination). Whether, as plaintiff argues, his BMI is above a certain level is irrelevant if the ALJ considered plaintiff's obesity.[2] "[T]he factual record does not support [plaintiff's] position that [his] obesity, either alone or in combination with other conditions, precludes [him] from performing [a limited range of sedentary] work." Rose, 634 F. App'x at 637 (quoting Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004)). The Court finds that the ALJ did consider plaintiff's obesity and, thus, plaintiff's objection is without merit.

### 3. Plaintiff's COPD Argument

Lastly, plaintiff argues that the ALJ erred in his COPD determination. Plaintiff argues that

> the ALJ [did not] reasonably consider[] plaintiff's COPD [because he did not mention] the 'severe obstruction' spirometry report in the medical records. Such a conclusion is contrary to the *Clifton* holding that an ALJ is required to discuss uncontroverted evidence that he chooses not to rely upon as well as significantly probative evidence that he rejects.

Dkt. # 18, at 18.

The ALJ considered plaintiff's COPD to be a severe impairment at step two. Dkt. # 11, at 33. At step three, the ALJ determined that the severity of the COPD did not equal the severity of one

---

[2] Oddly, plaintiff seems to reverse his position that the ALJ did not consider plaintiff's BMI. See Dkt. # 18, at 12 ("Plaintiff never contended that the lack of mention of a BMI was error *per se*. It was and remains plaintiff's position that the ALJ failed to properly evaluate and discuss this plaintiff's obesity.").

11

of the listed impairments in the appendix of 20 C.F.R. § 404. Id. The ALJ then considered plaintiff's testimony, his sister's report (although not given much weight), and nine medical visits. Id. at 36-41. In the testimony, the ALJ noted plaintiff's smoking habit and shortness of breath. Id. at 36. He noted from the sister's report that plaintiff had trouble breathing while bathing. Id. The ALJ noted the July 2015 hospital visit, in which plaintiff checked in to the emergency room for "abdominal pain and . . . respiratory failure." Id. at 37. The ALJ noted the COPD diagnosis from this hospital visit. Id. at 38. From the visit with Dr. Simon, the ALJ noted plaintiff's breathing problems and assessment for COPD. Id. at 38-39. In response to these findings, the ALJ made an RFC determination that plaintiff's sedentary work was limited to avoidance of fumes, odors, dusts, toxins, gases, and poor ventilation. Id. at 35. These findings clearly considered plaintiff's COPD. Accordingly, the Court finds that the ALJ did not err in his COPD determination.

Plaintiff's argument that the ALJ failed to consider his spirometry report from the medical records is equally unpersuasive and without merit. The ALJ must discuss evidence that is inconsistent with the RFC, but he is not required to discuss every piece of evidence in the record. Clifton, 79 F.3d at 1010 (The ALJ "must discuss the uncontroverted evidence he chooses to rely upon, as well as significantly probative evidence he rejects.") (citation omitted). Further, the ALJ did consider one of the reports by Dr. Lewis, although he did not specifically mention the spirometry report. See Dkt. # 11, at 40-41, 504-05. However, he gave little weight to Dr. Lewis's report because of inconsistencies in the report. Id. at 40-41. Plaintiff does not challenge the amount of weight given to the report, or its effects on the RFC determination. Therefore, the Court finds no error in the ALJ's failure to discuss the spirometry report.

Finally, the Clifton holding is not contrary to the ALJ's finding, as plaintiff argues. In Clifton, the Tenth Circuit held that an ALJ must explain findings at step three of his analysis. Clifton, 79 F.3d at 1009. The case had nothing to do with an RFC determination at step five, as plaintiff seems to argue. Further, the ALJ in plaintiff's case exhaustively explained his determination at step three, which is in line with the Clifton holding. See Dkt. # 11, at 33-35. The Court finds that the ALJ's decision follows the holding from Clifton. Plaintiff's third objection is denied.

V.

**Conclusion**

The Court has conducted its de novo review of the record related to plaintiff's objections, and concludes that the ALJ did not err in finding plaintiff not disabled. The magistrate judge's report and recommendation should be accepted. The Court finds that the Commissioner's decision should be affirmed.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision is **affirmed**. A separate judgment is entered herewith.

**DATED** this 18th day of February, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE